UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GILBERT LOO,

                     Petitioner,                     **OPINION & ORDER**
                                                            06-CV-9666 (SJF)

          -against-

THE PEOPLE OF THE STATE OF NEW YORK,

                     Respondent.
-------------------------------------------------------X

FEUERSTEIN, J.

## I. Introduction

On December 10, 2002, *pro se* petitioner Gilbert Loo ("Petitioner") was convicted by a jury in the Nassau County Court of the State of New York of two (2) counts of burglary in the second degree. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

## II. Petitioner's Pleadings

A *pro se* plaintiff's submissions are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). To this end, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Faretta v. California, 422 U.S. 806, 834 n. 36 (1975)

1

III. Background

   A. Factual Background[1]

At approximately 4:20 A.M., on March 31, 2000, Martina Cornell awakened her husband, Paul Cornell, after she heard strange footsteps coming from the first floor of their house, located at 75 Huron Road, Bellerose, New York. Mr. Cornell proceeded to investigate, and saw an intruder leaving the house by the rear kitchen door, which apparently activated the motion sensing light outside. Mrs. Cornell remained upstairs and called the police. She later reported that a two-dollar ($2.00) bill, which she had received as a gift for her son, was missing from her wallet.

When Officer Brendan Barnes ("Barnes") arrived at the scene, Mr. Cornell described the intruder as a dark-haired, white man in his mid-thirties, approximately five feet, nine inches (5' 9") tall, wearing a gray sweatshirt and dark pants. Barnes immediately transmitted this description by radio to his dispatcher, and directed her to notify the Floral Park units. He then instructed the units to set up a perimeter to cut off escape routes. Approximately forty (40) minutes after the radio transmission, Officer Michael Saville ("Saville") spotted an individual matching the description in a desolate area about four (4) blocks from 75 Huron Road. The individual was jumping down from a chain-link fence, which enclosed a sump. Ignoring Saville's "freeze" order, the individual fled along a nearby abandoned railroad platform and then jumped off the platform. Saville pursued the individual through several residential backyards and over several fences, briefly losing sight of him once or twice for a few seconds at a time. Throughout the pursuit, which lasted only a few minutes, Saville radioed information to other officers who were investigating the break-in at the Cornell residence.

---

[1] These facts are taken from the underlying petition and the trial transcripts.

Officer John Marrinan ("Marrinan") heard Saville's broadcast and, being nearby, positioned himself in the path of the individual. The individual ran into Marrinan and Marrinan held him at gunpoint until other officers arrived and handcuffed him. Saville later identified Petitioner as the individual he had previously been chasing. The police searched Petitioner and found a flashlight, two (2) screwdrivers, and a U-shaped wire tool, items that Detective Thomas Willdigg later identified as tools commonly used in burglaries. In addition, the officers found a wad of money, including a two-dollar ($2.00) bill, and a roll of thirty-three (33) cent stamps in Petitioner's pocket. The police confiscated these items, along with Petitioner's white gloves and Nike sneakers. The police noted that Petitioner appeared to be of Asian, not Caucasian, descent.

At approximately 5:14 A.M., Barnes drove Mr. Cornell to identify Petitioner, whom the police were detaining in handcuffs, about four (4) blocks away from the Cornell home. When Mr. Cornell saw Petitioner, he asked the officers to have him stand up, and then immediately identified him as the intruder he had seen earlier in his home.

While at the Cornell residence awaiting the arrival of a detective from the crime scene unit, one of the Cornell's neighbors informed Barnes that a nearby house had also been recently burglarized. Officer Barnes went to this house, located at 61 Huron Road, and spoke to the homeowner, Joanne Bootle ("Bootle"). Barnes observed shoe prints on a first floor exterior windowsill which, Bootle stated, had not been there the prior night. The window was also unlocked, although Bootle had locked it the previous night. Bootle discovered that she was missing a roll of thirty-three (33) cent stamps, which she had kept inside of a kitchen drawer, and sixty dollars ($60.00) in cash that had been in a wallet in her pocketbook, which she had left in a room near the kitchen.

3

When Officer Dennis Downes arrived at the Bootle residence, he observed the sneaker print on both the exterior and interior of the windowsill, and dirt and soil on the carpet of the dining room. An analysis of the shoe print found at the residence determined that the print matched Petitioner's right sneaker.

Petitioner was subsequently indicted and convicted of two (2) counts of burglary in the second degree and one (1) count of possession of burglar's tools.

B. Procedural History

Prior to Petitioner's first trial, a combined Mapp/Wade hearing was held to determine the admissibility of the show-up identification made of Petitioner by Mr. Cornell, and the tangible evidence recovered from Petitioner, excepting the postage stamps. See Mapp v. Ohio, 367 U.S. 643 (1961); United States v. Wade, 388 U.S. 218 (1967). The court denied Petitioner's motion to suppress the evidence.

A trial commenced on August 22, 2001. Petitioner was convicted of criminal possession of burglar's tools. The jury was unable to reach a verdict on the two (2) burglary charges and the court declared a mistral as to those counts.

A second trial, on the burglary charges, commenced on December 10, 2001, also resulted in a mistrial.

Prior to the commencement of the third trial, another Mapp hearing was held on the admissibility of the stamps recovered from Petitioner. The admissibility of the stamps had not been addressed at the first suppression hearing. Tr. 71, 75.[2] The court determined that the stamps were admissible. Tr. 75, 87-88.

---

[2] "Tr." refers to pages in the trial transcript. The trial transcript also contains the minutes of the second suppression hearing.

4

A third jury found Petitioner guilty of two (2) counts of burglary in the second degree on December 10, 2002. On March 27, 2003, Petitioner was sentenced to two (2) concurrent ten (10) year terms of imprisonment for the burglary convictions, and to time served on the earlier conviction for possession of burglar's tools.

Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department. Petitioner based his appeal on three (3) grounds: 1) the court's failure to suppress his identification and resulting arrest; 2) failure of the People to prove guilt beyond a reasonable doubt; and 3) a harsh and excessive sentence. On January 1, 2005, the Second Department affirmed the conviction and held: 1) the show-up identification was not unduly suggestive; 2) Petitioner's guilt was proven beyond a reasonable doubt; 3) the sentence imposed was not excessive; and 4) the other claims were either unpreserved for appellate review or without merit. See People v. Loo, 789 N.Y.S.2d 247 (App. Div. 2d Dep't. 2005). Petitioner sought leave to appeal to the New York Court of Appeals which was denied on April 26, 2005. See People v. Loo, 4 N.Y.3d 854 (2005).

On February 27, 2006, Petitioner filed a petition for a writ of habeas corpus. Petitioner claims: 1) his conviction violates the double jeopardy rule; and 2) ineffective assistance of trial counsel. Petitioner claims that defense counsel: a) demonstrated a lack of pretrial preparation; b) failed to request a Clayton hearing to determine whether the case should be dismissed in the interest of justice; c) was "partially asleep" during the prosecutor's opening statement; and d) failed to make an opening statement.

IV. The AEDPA

The Anti Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, governs petitions of incarcerated state court defendants seeking federal habeas corpus relief.

A.  Exhaustion

Prior to bringing a petition for habeas corpus relief in federal court, a petitioner "must exhaust the remedies available in state court or demonstrate that 'there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the [prisoner].'" Fama v. Commissioner of Correctional Services, 235 F.3d 804, 808 (2d Cir. 2000) (citation omitted, insertions in original). The exhaustion requirement mandates that a petitioner fairly present to the highest state court "both the factual and legal premises of the claim he asserts in federal court." Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir. 2003) (internal quotations and citation omitted). A federal habeas corpus petition which contains unexhausted claims should be dismissed, Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), unless there is no longer a state forum available to a petitioner to present his constitutional claim, in which case the federal court shall deem the claim exhausted and deny the claim as if the state court had considered but denied the claim on the basis of a state procedural rule which the petitioner had failed to follow. Coleman v. Thompson, 501 U.S. 727 (1991).

In cases involving petitions containing both exhausted and unexhausted claims, a federal district court may 1) stay the proceeding until such time as the petitioner has returned to state court and exhausted his previously unexhausted claims; 2) dismiss the "mixed" petition, without prejudice, until the claims have been exhausted in state court, unless the claims could not be raised following exhaustion pursuant to the one (1) year statute of limitations prescribed by the AEDPA; 3) give the petitioner an opportunity to withdraw the unexhausted claim or claims; or 4) deny the petition on the merits. Rhines v. Weber, 544 U.S. 269 (2005); Gandarilla v. Artuz, 322 F.3d 182, 186 (2d Cir. 2003). A habeas court may deny on the merits

a habeas petition containing unexhausted claims if those claims are "plainly meritless." Rhines, 544 U.S. at 277. See 28 U.S.C. § 2254(b)(2) (permitting federal courts to deny unexhausted habeas claims on the merits).

B. Standard of Review

Pursuant to 28 U. S. C. § 2254(d) an application for a writ of habeas corpus that has met the procedural prerequisites

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "Adjudication on the merits" requires a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural or other ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

Once claims have been adjudicated on the merits, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000); 28 U.S.C. 2254 § (d)(1). Alternatively, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413; 28 U.S.C. § 2254(d)(1). Under this standard, "a federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001). Under the AEDPA, determination of the factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1).

A federal habeas court need not engage in even this limited degree of review when the state court decision rests on independent and adequate state procedural grounds. Coleman, 501 U.S. at 750. A habeas court is procedurally barred from review of such claims. This rule applies even where a state court reaches the merits of a petitioner's claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision) (emphasis in original). However, this rule is not without exception. Generally, a claim otherwise procedurally barred may be reviewed by a federal court in the event that a habeas petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

V.   Analysis

   A.   Double Jeopardy

Petitioner did not raise his double jeopardy claim in any state court appeal and there is no longer a state forum in which Petitioner can raise this claim. Accordingly, the claim is

deemed exhausted. Petitioner has failed to demonstrate either cause for his failure to follow state procedural rules or prejudice that might result from a failure to review this claim. Any claim that Petitioner's appellate attorney provided Petitioner with ineffective assistance of counsel has not been exhausted in the New York courts and therefore, cannot be used to establish cause for procedural default. See Murray v. Carrier, 477 U.S. 478, 488-91 (1986). Petitioner has also not demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice. Therefore, the claim is dismissed as if it had been exhausted but denied by the state court on procedural grounds.

    B.    Ineffective Assistance of Counsel

Petitioner did not raise an ineffective assistance of counsel claim on direct review of his conviction nor did he file a motion to vacate the judgement pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10. Thus, no state court has been presented with this issue. At this juncture, Petitioner cannot seek review of his claims that his counsel a) failed to use the record of a previous pretrial hearing to indicate that there was no mention of stamps recovered from Petitioner, and thereby demonstrated a lack of pretrial preparation; b) failed to request a Clayton hearing to determine whether the case should be dismissed in the interest of justice; and c) failed to make an opening statement, because sufficient facts appeared on the record to have permitted the claims to be raised on direct review but Petitioner unjustifiably failed to raise them. See N.Y.C.P.L. § 440.10(2)(c). To the extent that there is no longer a state forum in which Petitioner can raise these claims, they are deemed exhausted. Petitioner has failed to demonstrate either cause for his failure to follow state procedural rules or prejudice that might result from a failure to review these claims. Any claim that Petitioner's

appellate attorney provided Petitioner with ineffective assistance of counsel has not been exhausted in the New York courts and therefore, cannot be used to establish cause for procedural default. See Murray v. Carrier, 477 U.S. 478, 488-91 (1986). Petitioner has also not demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Therefore, the claims are dismissed as if they had been exhausted but denied by the state court on procedural grounds.

However, the contention that counsel was "partially asleep" during the prosecutor's opening statement and was admonished off-the-record for that alleged behavior could not be ascertained from the record. The claim is unexhausted because it was not raised on direct appeal, but is not procedurally barred because it may still be raised in a motion to vacate the judgement pursuant N.Y.C.P.L. § 440.10. However, this claim is without merit and is therefore denied. See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277.

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must prove that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Claims of ineffectiveness are subject to a general requirement that the petitioner affirmatively prove prejudice. Id. at 693. Strickland recognized, however, that there are some situations where prejudice will be presumed. Id. at 692.

The evidence does not support the contention that Petitioner's attorney was deficient in his representation. Although Petitioner alleged that his attorney was "partially asleep" during the prosecutor's opening statement, the record demonstrates that he was alert and actively participated during the remainder of the trial, raising objections and cross-examining witnesses. Tr. 124-35, 142, 161-76, 200-12, 214-216, 251-71, 273-74, 293-97, 309-318, 335-42, 350-53, 370-72. Specifically, he moved to preclude evidence connecting Petitioner with the crime, Tr. 181, moved to strike inculpatory testimony, Tr. 211, moved for a mistrial, Tr. 375, moved for a trial order of dismissal, Tr. 376-77, made requests for the final charge to the jury, Tr. 378-81, and delivered a closing statement that assailed the prosecutor's case and urged acquittal. Tr. 386-98. Thus, Petitioner has failed to demonstrate that his counsel's performance "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 688.

Petitioner relies on Tippins v. Walker, 77 F.3d 682 (2d Cir. 1996), for the proposition that prejudice will be presumed where an attorney sleeps during trial. In Tippins, counsel 1) slept every day of the trial; 2) slept during the testimony of a critical prosecution witness; and 3) slept during damaging testimony by a co-defendant. Id. at 687. It was undisputed that the defense counsel was actually snoring in the courtroom throughout the trial. Id. at 688.

Although the Second Circuit acknowledged that at some point prejudice is inherent because an unconscious or sleeping counsel is equivalent to no counsel at all, it expressed reluctance to extend the rule of per se prejudice and stated that episodes of inattention or slumber are ordinarily amenable to analysis under the Strickland prejudice test. Id. at 686. See generally Nunez v. Miller, No. 00-CIV-966, 2001 WL 1773731, at *6 (E.D.N.Y. July 12, 2001)

11

(Korman, C.J.) (Second Circuit "limit[s] the presumption of prejudice to instances of total or near total derelictions in representation").

Petitioner alleges that counsel was "partially asleep" during the prosecutor's opening statement but does not state the duration of counsel's alleged inattention. Accepting Petitioner's allegation as fact, the situation is inapposite to Tippins, where the defense counsel was in a state of apparent unconsciousness throughout the trial. See United States v. Muyet, 994 F. Supp. 550, 560 (S.D.N.Y. 1998) (concluding, on motions for recusal, judgment of acquittal, new trial, and for arrest of judgement, that counsel who fell asleep a few times during trial was not ineffective).

As mentioned above, trial counsel vigorously participated throughout the trial and Petitioner does not establish, nor does the record demonstrate any prejudice from counsel's alleged nap during the prosecutor's opening statement. Thus, Petitioner has not established that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner has failed to establish ineffective assistance of counsel.

VI. Conclusion

The petition for a writ of habeas corpus is denied and the proceeding is dismissed. Since the petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253. See also Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Luciadore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d. Cir. 2000); Kellogg v. Strack, 269 F.3d 100, 102 (2d Cir. 2001). Petitioner has a right

to seek a certificate of appealability from the Court of Appeals for the Second Circuit. <u>See</u>, 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED

/Sandra J. Feuerstein
United State District Judge

Dated: January 18th, 2007
Central Islip, New York

Copies to:

Gilbert Loo, *pro se*
# 03A1888
Hale Creek A.S.A.T.C.A.
PO Box 950
Johnstown, NY 12095-0450


Andrea M. DiGregorio
Nassau County District Attorney
262 Old Country Road
Mineola, NY 11501